# THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

### 402 East State Street, Trenton, New Jersey 08608

_____

Peter I. Shah, Pro Se
132 Montfort Drive
Belle Mead, New Jersey. 08502
Ph; 908 432 5030
**Email: petershah@msn.com**

| | |
|---|---|
| PETER I. SHAH, PLAINTIFF | CIVIL ACTION |
| V. | JURY TRIAL DEMANDED |
| MAPLE ENERGY HOLDINGS, LLC RIVERSTONE HOLDINGS,LLC RAILROAD COMMISSION OF TEXAS, | **3:21-CV-20791-FLW-TJB** |
| | **HON. TONIANNE J. BONGIOVANNI** |
| DEFENDANTS | RESPONSE IN OPPOSITION |

# RESPONSE IN OPPOSITION TO MOTION TO DISMISS COMPLAINT  FILED BY THE RAILROAD COMMISSION OF TEXAS

# OVERVIEW OF CONTENT

**United States Statues:**

**U.S. Constitution 5th Amendment:**

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**U.S. Constitution 11th Amendment:**

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

**U.S. Constitution 14th Amendment:**

All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Confronting the Fictions of the Eleventh Amendment: Pennhurst State School and Hospital v. Halderman, 104 S. Ct. 900 (1984)

**Camille Gearhart**

When you sue the government ... you must falsely pretend ... that the suit is not against the government but that it is against an officer. You may get relief against the sovereign if, but only if, you falsely pretend that you are not asking for relief against the sovereign. The judges often will falsely pretend that they are not giving you relief against the sovereign, even though you know and they know, and they know that you know, that the relief is against the sovereign.

For the full text;

**https://digitalcommons.law.uw.edu/cgi/viewcontent.cgi?article=3553&context=wlr**

3

**THE TEXAS CONSTITUTION.      ARTICLE 1. BILL OF RIGHTS**

Sec. 17.   TAKING PROPERTY FOR PUBLIC USE; SPECIAL PRIVILEGES AND IMMUNITIES; CONTROL OF PRIVILEGES AND FRANCHISES.   (a)   No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and only if the taking, damage, or destruction is for:

(1)  the ownership, use, and enjoyment of the property, notwithstanding an incidental use, by:

(A)  the State, a political subdivision of the State, or the public at large; or

(B)  an entity granted the power of eminent domain under law; or

(2)  the elimination of urban blight on a particular parcel of property.

(b)   In this section, "public use" does not include the taking of property under Subsection (a) of this section for transfer to a private entity for the primary purpose of economic development or enhancement of tax revenues.

(c)   On or after January 1, 2010, the legislature may enact a general, local, or special law granting the power of eminent domain to an entity only on a two-thirds vote of all the members elected to each house.

(d)  When a person's property is taken under Subsection (a) of this section, except for the use of the State, compensation as described by Subsection (a) shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities shall be made; but all privileges and franchises granted by the Legislature, or created under its authority, shall be subject to the control thereof. (Feb. 15, 1876. Amended Nov. 3, 2009.)

For the full text visit:
**https://tlc.texas.gov/docs/legref/TxConst.pdf**

**TEXAS PRIVATE REAL PROPERTY RIGHTS PRESERVATION ACT GUIDELINES**

1.11. Purpose "The Private Real Property Rights Preservation Act," Texas Government Code chapter 2007 (the Property Rights Act), represents a basic charter for the protection of private real property rights in Texas. 1 The Property Rights Act is the Legislature's acknowledgment of the importance of protecting private real property interests in Texas. The purpose of the act is to ensure that certain governmental entities2 make a careful evaluation of their actions regarding private real property rights, and that those entities act according to the letter and spirit of the Property Rights Act. In short, the Property Rights Act is another instrument to ensure open and responsible government for Texans.


For full the text visit

**https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/general-oag/TexasPropertyRightsPreservationActGuidelines.pdf**

**SIGNIFICANT AUTHORITIES:**

1.    Lucas v. SC Coastal Council 505 US 1003 (1992)

2.    Knick v. Twp. of Scott ,U.S. 139 S.Ct. 2162

3.    MEYER v. STATE OF NEBRASKA 262 U.S. 390

4.    Fitzpatrick v. Bitzer, 427 U.S. 445 (1976)

5.    Lawton v. Steele, 152 U. S. 133,

6.    Lujan v. Defenders of Wildlife, 504 U.S. 555

7.    Williams v. Utah Dept of Correc 928 F. 3d 1209 (10th Cir 2019)

8.    Fitchik v. NJ Transit Rail Operations, Inc 873F. 2d 655 - 3RD CIR

9.    Rogers v. Bagley (N0 19-0634) Texas Supreme (Feb 2021)

10.   Devillier v. Texas, Civil Action 3:20-CV-00223 - 5th Cir

11.   O'Neil v. Vermont, 144 U.S. 323, 370 (1892)

12.   Tahoe-Sierra Pres. Council, Inc v. Tahoe Reg'l Planning Agency, 535 US 302, 326 (2002),

13.   Simi Inv. Co. v. Harris County 236 F. 3d. 240 (5th Cir)

14.   Leroy v. Great W. United Corp 433 US 18

15.   Monroe v. Pape, 365 U. S. 167, 183 (1961)

16.   *Nicholas v. Saul Stone & Co*., 224 F.3d 179, 184 (3d Cir. 2000)

17.   *Scheuer v. Rhodes , 416 U.S. 232, 236 (1974)*

*18.*   Lyle v. Midway Solar,LLC 618 S.W.3d 857 (2020)

19.   *Cottman Transmission Sys, Inc v. Martinio 36F. 3D 291,294 (3RD CIR 1994)*

*20.*   Felder v. Casey, 487 U.S. 131, 138 (1988).

21.    Neitzke v. Williams, 490 U. S. 319, 327 (1989)

22.   Morrissey v. Brewer, 408 U.S. 471, 481 (1982)

23.     Burger King  471 US at 477

24.     Hedges v. United States, 404 F. 3d 744, 750 (3rd Cir)

25.     Maguita v. Samples, 375 F. 3d. 1269 (11th Cir 2004)

26.     Johnson v. Larkford, 245 U.S. 541 (1917)

27.     Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 537 (2005)

28.      Nollan v. Cal. Coastal Comm'n, 483 U.S. 825 (1987)

29.      Urbano v. Bd. of Managers of NJ St. Prison 415 F.2d 247 (3d Cir. 1969)

30.      Shore Slurry Seal, Inc. v. CMI Corp., 964 F. Supp. 152, 156 (D.N.J. 1997)

31.      Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012)


Note: Please know that all authorities listed in the Response are not included here. Thank you.

## THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

402 East State Street, Trenton, New Jersey 08608

_____

Peter I. Shah, Pro Se
132 Montfort Drive
Belle Mead, New Jersey. 08502
Ph; 908 432 5030. **Email: petershah@msn.com**

| PETER I. SHAH, PLAINTIFF | CIVIL ACTION |
|---|---|
| V. | JURY TRIAL DEMANDED |
| MAPLE ENERGY HOLDINGS, LLC RIVERSTONE HOLDINGS,LLC RAILROAD COMMISSION OF TEXAS,    DEFENDANTS | **3:21-CV-20791-FLW-TJB** RESPONSE IN OPPOSITION HEARING REQUESTED |

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS

I, Peter I. Shah, Pro Se Plaintiff (hereinafter 'Shah' or 'I'), file this Response In Opposition to  Motion To Dismiss (hereinafter 'MTD') filed by the defendant Railroad Commission of Texas ( 'RRC' )  in Case Page IDs 151 to 185[1].

The RRC has filed MTD under Fed. R. Civ.P. 12 (b)1, 12(b)2, 12(b)3 and 12(b)6. The  MTD filed by the RRC is ambiguous and lacks certain details  and logical answers. The MTD is fundamentally defective. It is more than likely that I  will prevail and defeat arguments raised under 12 (b)1, 12(b)2, 12(b)3 and 12(b)6. In any case, as no discovery is done, in the interest  of Justice, I request the Court to deny the MTD in its entirety. Furthermore, I pray to Your Honor to provide me with any just and proper relief that may or may not be requested in my response.

---

[1] Rather than using docket number or document number/name and page, to simplify document search I have tried to use Case page ID numbers.

# INTRODUCTION OF PARTIES

Plaintiff: Peter I. Shah (Hereinafter 'Shah' or 'I')

Defendants:   Maple Energy Holdings LLC ('Maple') and   Riverstone
Holdings LLC ('Riverstone') (Collectively, 'Private defendants'),
Railroad Commission of Texas. ('RRC' or 'Public defendant').

# BACKGROUND

The controversy here stems from Shah owning a piece of land in Reeves
County, Texas. The land is 20.4 acres consisting of four 5.1 acre parcels.
The private defendants own and/or operate oil and gas storage facilities
as well as gas flaring and venting operations on this land. It is assumed
that private defendants are able  to operate  this gas flare and oil tank
battery operations with the guidance and blessings of the public
defendant. Not considering roadways, pipelines and other peripheral
operations/properties, it is assumed here that these facilities cover about
5 acres of the land. These oil and gas facilities sit right in the center of
the 20.4 acres, covering some portion of each of the four lots. Shah has
not  authorized these oil and gas operations. These facilities have been
operational for the past two years. There has been no economical gains to
the Shah from these operations.

In the  past 30 years or so the State of Texas has explored more oil and
gas than probably all remaining states in the USA combined. It is likely that
in the past 5 years Texas has flared more gas in the air than the previous
50 years. Why and how Texas does this is unclear to me. Maybe the answer
lies with Texas Courts. The Texas Courts have overwhelmingly supported oil
and gas companies and their exploration and flaring of gas. The Courts
created (through case laws) many  different classes of 'real properties'. The
real property rights in Texas are considered to be a bundle of sticks. And
so, they created dominant mineral estate rights in support of oil and gas

companies.   Mineral owners are considered to be the dominant estate holders and are the most favored class of real property rights. Surface, not that much.[2] No other State in the Union disfavor land(surface) owners as much as in Texas. Doesn't it violate US Constitutional rights granted in 5th and 14th amendments?  Is depriving me of property without any compensation legal[3]?  Isn't that a violation of 'equal protection' law?  By flaring gas (permitted or not permitted)[4] on my land without my permission, the RRC is depriving me of clean breathing air. Is that legal in the United States? Isn't  that the violation of my ***life and liberty*** rights granted to me in the 14th Amendment?

Furthermore, the reading of the MTD tells us that there is no  State statute or law that can be challenged as there is none in regards to the real  property rights pertaining to oil and gas.  All controversies are decided by the Texas courts (98% of the time in favor of oil and gas companies and RRC). There lies my dispute. How can someone just invade my property, spray me with  oil and gas and in that process- deprive me of the clean breating air and kill me by slow torturous  death- is beyond me.[5]

# RESPONSE[6]

---

[2]  Although, recently the Texas Court of Appeals has upped surface owner's rights a little bit more. See Lyle v. Midway Solar,LLC 618 S.W.3d 857 (2020). Additionally, after the great black out of 2021, Texas is moving more towards renewable  energy and also has enhanced surface rights.

[3] The interesting irony here is, I have recently signed a lease with a Renewable Energy Storage Company, also for 5 acres out of this 20.4 acres, for a decent yearly compensation and I am  happy with it.(See Docket 20).

[4] According to a published report, according to RRC about 69% of gas flares in Texas are unpermitted. (See Docket 16).

[5] I had plans to move to this property in Texas, however, because of Tank Battery and Gas Flare, I was forced to cancel.

[6]  I am a pro se and not an attorney. English is my 2nd language and my syntaxing is bad and  grammar is the worst. And so, I appreciate the Court, all defendants and all related parties here for understanding me in whatever miserable way I express myself. Thank you.

The public defendant RRC has filed the   MTD. The   private defendants Maple Energy Holdings, LLC and Riverstone Holdings, LLC   also have filed MTD. The arguments raised by public and private defendants in their respective MTD are somewhat *Pari Materia*. It appears to me that all the defendants want me to disappear. Why? What are they afraid of? It is really sad and disheartening.

The Complaint is filed under 'Federal question' Jurisdiction as well as under 'Diversity of Citizenship' Jurisdiction. Under 28 USC § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 USC §1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

The public and private defendants here are intertwined and they feed on each other. One can not survive without the other.

As RRC has filed MTD under 12(b)1, 12(b)2, 12(b)3 and 12(b)6, I will   subsequently address each argument. I request the Court to consider my *Complaint* in its entirety as well as all documents filed in the Court Docket of this case. Furthermore, regardless of whether I submitted or not any case   law authority(ies) or statutes of the United States, please provide me with as much remedy as possible.

The defendants' main argument in their MTD is that because they are a semi Texas government agency-Eleventh Amendment immunity applies. Not correct. I will provide a detailed analysis of my such position later in the Response. However, if somehow, even if, 11th amendment immunity applies here, that should not bar my case from moving forward at this initial stage.I submit here many

case law authorities in support of my complaint. Furthermore, I believe, my 14th amendment due process claims trumps all arguments made in the MTD.

# 12(b)1

**1**.  *Alden v. Maine, 527 U.S. 706, 756 (1999)* : By ratifying the Fourteenth Amendment, the states "surrender[ed] a portion of the sovereignty that had been preserved to them by the original Constitution," including their right to sovereign immunity.

**2**.  *Fitzpatrick v. Bitzer, 427 U.S. 445 (1976*): Thus, it makes little sense to think of congressional action as tipping the scales. Regardless of whether section 1 or section 5 is considered, the Fourteenth Amendment is being weighed against the Eleventh. The Fourteenth Amendment wins that numbers game under *Fitzpatrick*

**3.**  *Sierra Club v. Motron, 405 US 727-1972*: "person suffering legal wrong because of agency action, or [who is] adversely affected or aggrieved by agency action within the meaning of a relevant statute."*Held:* A person has standing to seek judicial review under the Administrative Procedure Act only if he can show that he himself has suffered or will suffer injury, whether economic or otherwise.

**4**.  *Adkins v. Children's Hosp., 261 U.S. 525 (1923*): That the right to contract about one's affairs is part of the liberty of the individual protected by the Fifth Amendment, is settled by repeated decisions of this Court.

**The Fourteenth Amendment :** *"All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of*

*life, liberty, or property, without due process of law; nor deny to any*
*person within its jurisdiction the equal protection of the laws.*

A motion to dismiss on the basis of Fed.R.Civ.P. 12(b)(1) for lack of
subject matter jurisdiction made prior to the filing of the defendant's
answer is a facial challenge to the complaint. *See Mortensen v. First Fed.*
*Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977); *Courtney v. Choplin,*
195 F.Supp.2d 649, 650 (D.N.J.2002). Review of a facial challenge in this
context is similar to review of a 12(b)(6) motion and requires the Court to
accept the allegations in the complaint as true. *See Mortensen,* 549 F.2d
at 891; *Courtney,* 195 F.Supp.2d at 650. Therefore, the Court views the
Complaint in the light most favorable to Plaintiffs. *Mortensen,* 549 F.2d at
891.


**5**.      In *O'Neil v. Vermont, 144 U.S. 323, 370 (1892*): Justice Harlan,
with Justice Brewer concurring, argued that since the adoption of the
Fourteenth Amendment, no one of the fundamental rights of life, liberty,
or property, recognized and guaranteed by the Constitution of the United
States, can be denied or abridged by a State in respect to any person
within its jurisdiction. These rights are, principally, enumerated in the
earlier Amendments of the Constitution. Justice Field took the same
position. *Id. at 337*. Thus, he said: While therefore, the ten Amendments,
as limitations on power, and so far as they accomplish their purpose and
find their fruition in such limitations, are applicable only to the Federal
government and not to the States, yet, so far as they declare or recognize
the rights of persons, they are rights belonging to them as citizens of the
United States under the Constitution; and the Fourteenth Amendment, as
to all such rights, places a limit upon state power by ordaining that no
State shall make or enforce any law which shall abridge them. *Id. at 363*.
Justice Harlan reasserted this view in *Maxwell v. Dow, 176 U.S. 581, 605*

*(1900)* (dissenting opinion), and in *Twining v. New Jersey, 211 U.S. 78, 114* (1908) (dissenting opinion).

In some early Supreme Court cases involving the eleventh amendment, the Court ruled in favor of private individual plaintiffs suing government officials based on diversity jurisdiction.See, e.g., Johnson v. Larkford, 245 U.S. 541 (1917) (citizens of Massachusetts against bank commissioner of Oklahoma); Scully v. Bird, 209 U.S. 481 (1908) (citizen of Illinois against dairy and food commissioner of Michigan); Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362 (1894) (citizen of New York against railroad commissioner and attorney general of Texas).

The RRC has made multiple arguments stating that their 11th amendment immunity bars instant action. However, the 11th amendment tells us not to sue the 'State' but does not mention 'State Agencies'. Additionally, as per  the 14th amendment language, "*No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."*
Moreover, as per the above case laws, I am allowed recovery for the faulty Texas State Law as well as invasion on my property. I have standing to sue RRC.

**6**.    *MEYER v. STATE OF NEBRASKA 262 U.S. 390*: While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to

enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. *Slaughter-House Cases, 16 Wall. 36, 21 L. Ed. 394; Butchers' Union Co. v. Crescent City Co., 111 U. S. 746, 4 Sup. Ct. 652, 28 L. Ed. 585; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220*.

**7.**   *Lawton v. Steele, 152 U. S. 133, 137, 14 Sup. Ct. 499, 38 L. Ed. 385*: "The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect. Determination by the Legislature of what constitutes proper exercise of police power is not final or conclusive but is subject to supervision by the courts."

**8**.   *Lujan v. Defenders of Wildlife*, *504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)*: Article III of the U.S. Constitution confines federal courts to hearing only "cases" and "controversies." Standing is a core component of the Article III case or controversy requirement. To establish constitutional standing, plaintiffs must demonstrate three elements, which constitute the "irreducible . . . minimum" of Article III standing, *id.* at 560, 112 S.Ct. 2130: (1) *injury-in-fact* — plaintiff must allege "concrete and particularized" and "actual or imminent" harm to a legally protected interest, *id.* at 560-61, 112 S.Ct. 2130; (2) *causal connection* — the injury must be "fairly traceable" to the conduct complained of, *Allen v. Wright*, 468 U.S.737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); and (3) *redressability* — a favorable decision must be "likely" to redress the injury-in-fact. *Id.*

Shah has been injured. Shah's right to life, liberty and property are being violated on a daily basis. Guided by the RRC regulations, the private defendants installed  gas flare and tank battery operations and have taken approximately 5 acres of my land. The air quality is extremely

15

dangerous. The injury is easily traceable and it is very likely that the Court will rule in my favor. I have standing to sue RRC.

**9**.    *Fitchik v. NJ Transit Rail Operations, Inc 873F. 2d 655, 658 (3RD CIR):* '[L]ocal law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance. Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations.

'This Court has attempted to effectuate the amendment's purpose by application of the factors listed in *Urbano*[7]. In this case, the most important *Urbano* factor--whether the judgment would be paid by state funds--provides extremely strong indication that NJT is not the *alter ego* of New Jersey. The other factors--NJT's treatment under state law, and its degree of autonomy--provide only weak support for the conclusion that NJT is New Jersey's *alter ego*. On balance, therefore, we conclude that NJT is not the *alter ego* of New Jersey, and thus that its subsidiary, NJTRO, is not entitled to eleventh amendment immunity.'*Id*

Consequently here, as above, it appears that RRC is not   entitled to eleventh amendment immunity. Please see the following chart.

---

[7] *Urbano v. Bd. of Managers of NJ St. Prison 415 F.2d 247 (3d Cir. 1969)*

|    | Question | Answer |
|----|----------|--------|
| 1  | Is RRC performing a governmental or proprietary function? | Proprietary |
| 2  | Has RRC been separately incorporated? | Yes |
| 3  | The degree of autonomy over its operations. | 100% |
| 4  | Does RRC has the power to sue and be sued | Yes |
| 5  | Can RRC enter into the contracts? | Yes |
| 6  | Are the RRC properties  immune from state taxation? | I don't know. |
| 7  | Whether the sovereign has immunized itself from responsibility for the agency's operations | I don't know. |
| 8  | Can RRC collect fees and fines? | Yes |
| 9  | Can RRC Commissioners and Management invest in and own Oil and Gas operations | Yes |
| 10 | **Does RRC have the funds or the power to satisfy the money judgment?** | **Yes** |

**10.**    *Quern v. Jordan, 440 U.S. 332, 337 (1979):* Under the guidelines provided, the state must also have a fiscal stake in the judgment before the eleventh amendment will be applied to bar the action.

In sum, the 11th amendment immunity does not apply to RRC.

**11**.    *Williams v. Utah Dept of Correc 928 F. 3d 1209 (10th Cir 2019)*: "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md.*

*Inc. v. Pub. Serv. Comm'n of Md.* , 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002).

**12.**   *Rogers v. Bagley (N0 19-0634) Texas Supreme (Feb 2021):* "The Supremacy Clause of the United States Constitution dictates that the "Constitution, and the Laws of the United States" are"the supreme Law of the Land."   U.S.CONST. art. VI, cl. 2. When federal law and state law conflict, the inconsistent state law necessarily gives way to the federal law. See Free v. Bland, 369 U.S. 663, 666 (1962)("[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.")(citing *Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 3 (1824)*)Whether an inconsistent state law is preempted when a plaintiff brings a federal cause of action in state court depends, generally, on whether the state law is procedural or substantive in nature. See *Felder v. Casey, 487 U.S. 131, 138 (1988).*   But those labels are not themselves determinative. The essential question is whether the state law stands as an obstacle to the federal law  such that enforcement of the state law will frequently and predictably produce  different outcomes based solely on whether the claim is asserted in state or federal court. *Id* The Supreme Court  of  the  United  States has said that, while "[s]tates may establish the rules of procedure governing litigation in their own courts[,] . . . where state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.'" *Id (quoting Brown v. W. Ry. of Ala., 338 U.S. 294, 296 (1949)).*

The Court has subject matter Jurisdiction. Shah has standing and is entitled to prosecute his claims  and get relief requested in the Complaint. The 11th amendment immunity does not bar this action and the MTD should be denied.

# TAKING AUTHORITIES

As per TEXAS PRIVATE REAL PROPERTY RIGHTS PRESERVATION ACT GUIDELINES[8]- 1.3. Constitutional Regulatory "Takings" Analysis:
A governmental action may result in the "taking" of private real property requiring the payment of compensation if that action denies an owner of the economically viable use of her land. Deprivation of economic viability may occur through the denial of development permits, as well as through the application of ordinances or state laws. Lucas, 505 U.S. at 1019; Dolan, 512 U.S. at 385 n.6. "[A] plaintiff seeking to challenge a government regulation as an uncompensated taking of private property may proceed . . . by alleging a 'physical' taking, a Lucas-type 'total regulatory taking,' a Penn Central taking, or a land-use exaction violating the standards set forth in Nollan and Dolan." Lingle, 544 U.S. at 548 (referring to Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104 (1978)); see also Nollan v. Cal. Coastal Comm'n, 483 U.S. 825 (1987)

**13.**     *Tahoe-Sierra Pres. Council, Inc v. Tahoe Reg'l Planning Agency, 535 US 302, 326 (2002*): However, in another subset of takings cases, a plaintiff *will* be seeking money damages against a state. Such a suit may arise, for example, where a government regulation restricts the use of property and an owner later sues for the loss of use while the regulation was in effect.

**14*.*     *KNICK v. TOWNSHIP OF SCOTT, PENNSYLVANIA Decided June 21, 2019 US* : This Court has long recognized that property owners may bring Fifth Amendment claims for compensation as soon as their property has been taken, regardless of any other post-taking remedies that may be available to the property owner. See Jacobs v. United States, 290 U. S. 13.The only reason that a taking would automatically entitle a property owner to the remedy of compensation is that, as Justice Brennan explained, with the uncompensated taking "the landowner has already suffered a constitutional violation." San Diego Gas & Elec. Co., 450 U. S., at 654 (dissenting opinion)" the compensation remedy is required by the

---

[8]https://www.texasattorneygeneral.gov/sites/default/files/files/divisions/general-oag/TexasPropertyRightsPreservationActGuidelines.pdf

Constitution in the event of a taking." First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, 482 U. S. 304. A property owner acquires a right to compensation immediately upon an uncompensated taking because the taking itself violates the Fifth Amendment. See *San Diego Gas & Elec. Co. v. San Diego, 450 U. S. 621, 654 (Brennan, J., dissenting)*. The property owner may, therefore, bring a claim under §1983 for the deprivation of a constitutional right at that time. Pp. 6–12

**15.** *Lucas v. SC Coastal Council 505 US 1003 (1992)*: Regulations that deny the property owner all "economically viable use of his land" constitute one of the discrete categories of regulatory deprivations that require compensation without the usual case-specific inquiry into the public interest advanced in support of the restraint. Although the Court has never set forth the justification for this categorical rule, the practical—and economic ─equivalence of physically appropriating and eliminating all beneficial use of land counsels its preservation.

**16.** *Monroe v. Pape, 365 U. S. 167, 183 (1961)*:"The federal (Taking-emphasis added) remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."

**17**. *Simi Inv. Co. v. Harris County 236 F. 3d. 240 (5th Cir)*; 'The County thus contends that the only potential federal claim available to Simi is a "takings" claim under the Fifth and Fourteenth Amendments, and that Simi has conceded that such a claim is not ripe for review. While we agree that the takings claim is not ripe for review, this argument does not dispose of Simi's suit because the § 1983 substantive due process claim was properly before the district court. See *John Corp., 214 F.3d at 582*. Our limited holding in *John Corp.* is similarly limited here; we find only that when a state

20

interferes with property interests, a substantive due process claim *may* survive a takings analysis and, therefore, provide jurisdiction for a federal court.*Id. A violation of substantive due process, for example, occurs only when the government deprives someone of liberty or property; or, to use the current jargon, only when the government works a deprivation of a constitutionally protected interest." Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988) (internal quotation marks and citations omitted); see also DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 601 (3d Cir. 1995) ("[I]n the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrary or capricious.")'Id.*

For the past 2+ years, Shah had not received any compensation for oil and gas operations on  his land. At the same time, private defendants made millions of dollars in revenue and public defendant generated thousands in permit fees and fines. All in *ill gotten* gains.

The RRC on page case page ID 166-on 2nd para writes,"Here, Shah does not plead viable takings claim against the Commission, as he fails to include factual allegations that the Commission took any action at all, let alone took, damaged, or destroyed his property for a public use"

Does this mean that RRC has not granted any permits to the private defendants to operate on my land? If this is the case, why doesn't RRC shut down these unpermitted oil and gas operations? Such Powers are granted to them in the Texas Natural Resource Code. Not only that the RRC has power to shut these kinds of

unauthorized operations, it can even charge them a $1000/day penalty as per the Code.[9]

However, if RRC has granted any kind of oil and gas permit and/or pipeline permits for my surface acreage, the RRC is the necessary party in this case and cannot be dismissed.[10] Furthermore, the $H_2S$[11] gas flare operation on my land is the ultimate weapon and  mass killer. I was never informed of these kinds of operations from anyone and both private and public defendants must pay for their horrendous invasion and illegal acts.

**18**.  *KNICK v. TOWNSHIP OF SCOTT, PENNSYLVANIA Decided June 21, 2019 US* .  JUSTICE THOMAS, concurring: According to the United States, "there is a 'nearly infinite variety of ways in which government actions or regulations can affect property interests,'" and it ought to be good enough that the government "implicitly promises to pay compensation for any taking" if a property owner successfully sues the government in court. This "sue me" approach to the Takings Clause is untenable. The Fifth Amendment does not merely provide a damages remedy to a property owner willing to "shoulder the burden of securing compensation" after the government takes property without paying for it. *Arrigoni Enterprises, LLC v. Durham, 578 U. S. ___, ___ (2016)* (THOMAS, J., dissenting from denial of certiorari) (slip op., at 2). Instead, it makes just compensation a "prerequisite" to the government's authority to "tak[e] property for public use." *Ibid*. A "purported exercise of the eminent-domain power" is therefore "invalid" unless the government "pays just compensation before or at the time of its taking." Id., at ___ (slip op., at 3). If this requirement

---

[9] Texas Nat. Res. Code.
https://statutes.capitol.texas.gov/docs/sdocs/naturalresourcescode.pdf
[10] If allowed to amend, I will  add the Attorney General of Texas as a necessary defendant.
[11] At low levels, *hydrogen sulfide* causes irritation of the eyes, nose, and throat. Moderate levels can cause headache, dizziness, nausea, and vomiting, as well as coughing and difficulty in breathing. Higher levels can cause shock, convulsions, coma, and death.

makes some regulatory programs "unworkable in practice," Supp. Brief 5, so be it—our role is to enforce the Takings Clause as written. Still, "[w]hen the government repudiates [its] duty" to pay just compensation, its actions "are not only unconstitutional" but may be "tortious as well." *Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U. S. 687, 717 (1999)*.

**19**.      *Devillier v. Texas, Civil Action 3:20-CV-00223 - 5th Cir*: "Under the State's view, it can take property from a private citizen without paying just compensation and the private citizen would be left without a remedy. Take an example. Person A owns a 20-acre vacant parcel. While Person A is on a five-year trip around the world, the State commandeers the property, constructs a state office building on the property, and utilizes the building on the property—all without the permission of the property owner. When Person A returns home, the State tears down the building and returns the property to its original vacant state. This is a classic taking for which Person A is clearly entitled to be compensated.  See *Knick v. Township of Scott, 139 S.Ct. 2162, 2167 (2019)* ("A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it."); Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 537 (2005) ("The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property."). But not so fast. Amazingly, the State maintains that Person A would have no federal constitutional remedy against the State because a Fifth Amendment takings claim can never be brought against a State under § 1983. This thinking eviscerates hundreds of years of Constitutional law in one fell swoop, and flies in the face of commonsense. It is pretzel logic."

"Article I, section 17 of the Texas Constitution, the State's version of the Fifth Amendment's Taking Clause, provides an undeniable waiver of

governmental immunity for claims arising from an unconstitutional taking of property for public use without adequate compensation.See Tex. Const. art. I, § 17; Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex. 1980) ("The [Texas] Constitution itself . . . is a waiver of governmental immunity for the taking, damaging[, ] or destruction of property for public use."); Kirby Lake Dev. Ltd. v. Clear Lake City Water Auth., 321 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2008), aff'd, 320 S.W.3d 829 (Tex. 2010),("There is a clear and unambiguous waiver of immunity from suit *for inverse-condemnation claims within the ambit of article I, section 17 of the Texas Constitution.").*

*Devillier*  is  somewhat a similar case. Public and private defendants took the  property of a New Jersey resident in Texas without even informing him. Here, under RRC regulations and permissions that resulted  in **Taking** of my property and so, I must be paid just compensation for that.

In summary, **(i)** The Court has subject-matter jurisdiction over Shah's claims for monetary damages against the RRC. **(ii)** The RRC is NOT entitled to sovereign immunity. **(iii)** because of complete jurisdiction (of RRC) on all actions of private defendant's activities on Shah's land, Shah has standing to claim remedy for an  injury that  involves RRC.

## 12(b)2

The Complaint is filed under U.S. Civil statute 5th  and 14th Amendments, Texas Real Property Laws and Common laws. (Complaint at Page 4)

It is unclear to me why the RRC is raising 'Personal Jurisdiction' questions. As explained above, the RRC is not saved by the 11th amendment  sovereign immunity. And even if it did, my 14th amendment rights, including the substantive due process treatment in regards to my life, liberty and property  trumps  that. Your Honor,

I am lost here, as this area is extremely complex.  The way the facts I understand is, neither the Texas Property Laws or the Texas Constitution discriminate and or differentiate mineral estate v. surface estate rights. It is the defendant RRC, having complete Jurisdiction over private actors is creating havoc for me and violating my constitutional rights.

The subject land is in Texas. It is my understanding that none of the defendants, private or public, has shown any statute of law stating that what they are doing is legal(by installing oil and gas operations and flares on my land without my approval). The RRC has complete and sole jurisdiction of all oil and gas operations in Texas. The  RRC in the MTD brings up *Coyote Lake Ranch, LLC v. City of Lubbock, 498 S.W.3d 53, 60 (Tex. 2016)* . However, this is a Texas case , derived completely by the business policy of the State of Texas, absent any actual law or statute.[12] Additionally, my consultation with a Texas attorney and reading of many oil and gas related Texas Court's opinions, leads me to believe that there is no such Law-stating mineral estate as the supreme estate and surface estate must yield to it[13]. My common sense tells me there should be no such discriminating law or statue. However, I concede that I don't know enough to state it either way. And so, if I am mistaken here in any way, I apologize.

And so, further to that I believe the State of Texas through the case laws implements such  dubious faulty laws. No other State in the Union has such vague case laws in regards to the  Real Property.

Furthermore, please know that defendant   RRC and private defendants are intertwined and feed on each other. Additionally, they all could be in violation of my constitutional rights.

---

[12] Texas Real Property Law.
https://statutes.capitol.texas.gov/Docs/GV/htm/GV.2007.htm
[13] Please note mineral estate is not taxed but surface estate is.

The Complaint  satisfies all  Jurisdiction requirements under 28 USC § 1331 and 1332. The Jurisdiction is proper and the MTD must be DENIED.

**20**.  *Knick v. Twp. of Scott* ,U.S. 139 S.Ct. 2162, 2172, 2179, 204 L.Ed.2d 558, 2019 WL 2552486, at *7, *13 (2019): the Supreme Court's recent holding that a property owner may bring a federal suit claiming a Fifth Amendment taking without first bringing suit in state court.

**21**.  *Leroy v. Great W. United Corp 433 US 183*: "The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum. See generally C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure 3801, pp. 5-6 (1976) (hereinafter Wright, Miller, & Cooper). On the other hand, neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties. See *Olberding v. Illinois Central R. Co., 346 U.S. 338, 340 ; Neirbo Co. v. Bethlehem Corp., 308 U.S. 165, 167* . **Accordingly, when there is a sound prudential justification for doing so, we conclude that a court may reverse the normal order of considering personal jurisdiction and venue."**

**22.**  *Nicholas v. Saul Stone & Co*., 224 F.3d 179, 184 (3d Cir. 2000))."New Jersey's long arm statute allows the exercise of personal jurisdiction over non-resident defendants to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment."   "Pursuant to the Due Process Clause of the Fourteenth Amendment, in personam jurisdiction may be asserted

over a nonresident so long as the defendant has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Telcordia Tech Inc. v. Telkom SA Ltd, 458 F.3d 172, 177 (3d Cir. 2006)* (citing *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).*

The 12(b)2 does not bar my Complaint at this initial stage.The MTD should be denied.

# 12(b)3

The RRC seeks dismissal  under Fed.R. Civ. P.12(b)(3).

**23.**  *Burger King, 471 U.S. at 477*; Courts in "appropriate cases" may evaluate (1) the burden on the defendant [to litigate in the relevant forum]; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining convenient and effective relief; (5) the interstate judicial system's interest in obtaining the most effective relief; (6) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (7) the shared interest of the several States in furthering substantive social policies.see also *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).*

**24.**  *Cottman Transmission Sys, Inc v. Martinio 36F. 3D 291,294 (3RD CIR 1994) :"*In the situation where the venue is proper for one defendant but not for another and dismissal is inappropriate, the district court has a choice.  One option is to transfer the entire case to another district that is proper for both defendants.  Another alternative is to sever the claims, retaining jurisdiction over one defendant and transferring the case as to the other defendant to an appropriate district.  See *In re Fine Paper Antitrust Litig., 685 F.2d 810, 819 (3d Cir. 1982); 15 Charles Alan Wright*

*et al., Federal Practice & Procedure § 3827, at 275-76 (1986 & Supp. 1994)."*

By applying most of the factors shown in *Burger King,* it appears that New Jersey is the proper and the best venue choice.

**25.** "In this Circuit, a plaintiff's choice of forum is of 'paramount concern' in deciding a motion to transfer venue." Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc., 825 F. Supp. 671, 681 (D.N.J. 1993) (quoting Sandvik, Inc. v. Cont'l Ins. Co., 724 F. Supp. 303, 307 (D.N.J. 1989) (quoting Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)); Shore Slurry Seal, Inc. v. CMI Corp., 964 F. Supp. 152, 156 (D.N.J. 1997) (same); Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett. Ltd., 847 F. Supp. 1244, 1246 (D.N.J. 1994) (giving plaintiff's choice of forum "significant weight"). The choice to file in a home-state forum deserves particular deference. See Lony v*. E.I. Du Pont de Nemours & Co., 886 F.2d 629, 633 (3d Cir. 1989);* American Tel. & Tel. Co. v. MCI Communications Corp., 736 F. Supp. 1294, 1306 (D.N.J. 1990) [hereinafter "AT&T"] (noting "the greatly enhanced deference due to a plaintiff suing in its home state"). . "[U]nless the balance is strongly tipped in favor of the defendant, the plaintiff's choice of forum should not be disturbed." *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993) (internal quotations omitted); Lacey v. Cessna Airfract Co., 862 F.2d 38, 43 (3d Cir. 1988) ("[T]he plaintiff's choice of forum should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant.").

**26**.    The Third Circuit has stated that "a district court that lacks personal jurisdiction must at least consider a transfer." *Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124, 132 (3d Cir. 2020)*. Under 28 U.S.C. § 1631, the Court "shall, if it is in the interest of justice, transfer such action ... to any other such court ... in which the action ... could have been brought." "Transfer is generally more in the interest of

justice than dismissal." *Boily v. Walt Disney World Co., No. 08-04967, 2009 WL 1228463, at \*8 (D.N.J. May 1, 2009) (citation omitted)*.

Your Honor, please know that defendant Maple is located in Delaware and defendant Riverstone is in New York. Only defendant RRC is located in Texas and so, there is no reason for the case to be transferred to Texas.

By applying most of the factors described in *Burger King,* it appears that New Jersey is the proper common sense venue.

Furthermore, New Jersey is also most economical to all defendants as well as to the plaintiff. And even if the Court decides to transfer the case, where would it be transferred? New York, Delaware or Texas? Venue transfer to any other state will create a tremendous burden on the plaintiff as well as most of the defendants. That does not make sense at all. Please, keep the action going in New Jersey.

## 12(b)6

Fed. R.Civ.P. 8(a) (2). Under the liberal pleading regime that Rule 8(a) (2) establishes, a complaint "need only `give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *High Tech Enterprises, Inc. v. Semon,* No. CIV.A. 96-6017, 1997 WL 59323, at \*1 (E.D.Pa. Feb.10, 1997) (quoting *Conley,* 355 U.S. at 47, 78 S.Ct. 99); *Blackwell v. Power Test Corp.,* 540 F. Supp. 802, 814 (D.N.J.1981) (Meanor, J.). Conversely, Rule 8(a) (2) does "not require a complainant to set forth in detail the facts upon which the claim is based." *Breslin v. Vornado, Inc.,* 559 F. Supp. 187, 191 (E.D.Pa. 1983); *see also Schaedler v. Reading Eagle Publication, Inc.,* 370 F.2d 795, 798 (3d Cir.1967). "The Federal Rules of Civil Procedure reject the notion that pleading is a game of skill in which one misstep by counsel may decide the outcome." *Breslin, 559 F. Supp. at 191.*

Determining whether a complaint states a plausible claim for relief [is]…a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense. *Iqbal, 556 U.S. at 679* (quoting FED. R. CIV. P. 8(a)(2))

**27**.   *Morrissey v. Brewer, 408 US 471, 481 (1982)*); " The requirement of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount.

**28.**   *Carey v. Piphus, 435 U.S. 247, 259 (1978*). "[P]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases." Mathews v. Eldridge, 424 U.S. 319, 344 (1976).Thus, the required elements of due process are those that "minimize substantively unfair or mistaken deprivations" by enabling persons to contest the basis upon which a state proposes to deprive them of protected interests.

**29.**   *Dunn v. Castro, 621 F.3d 1196, 1205 n.6* (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)); Magulta v. Samples, 375 F.3d 1269, 1274-75 (11th Cir. 2004)It is well established that "[c]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss[.]" (when reviewing a motion to dismiss for failure to state a claim, courts should read the complaint in its entirety); 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)

**30**.   a pro se complaint may be dismissed for failure to state a claim only if the allegations set forth by plaintiff cannot be construed as supplying facts in support of a claim, which would entitle the plaintiff to relief." *Rhett v. N.J. State Superior Ct.,* No. 07-2303, 2007 WL 1791264, at *2 (D.N.J. June 19, 2007) (citing

*Milhouse v. Carlson,* 652 F.2d 371, 373 (3d Cir. 1981), *aff'd,* 260 F. App'x 513 (3d Cir. 2008)).

**The Complaint provides following FACTUAL details(Case Page IDs 1-28).**

a. All Defendants are engaged in direct or indirect unauthorized use of the real property. (Case Page ID 4)

b. All Defendants are engaged in- damages to real property, negligence, unauthorized oil and gas operations, continuous oil spill, environmental hazards, illegal gas flaring/venting (Case Page IDs 4,18).

c. The Complaint is filed under the Real Property Taking Claims (Case Page ID 4)

d. Defendants have built a tank battery operation on the Plaintiff's land without Plaintiff's authorization[14].(Case Page ID 12)

e. Shah's name is not included in any liability insurance policy covering his land. (Case Page ID 13).

f. The RRC has sole Jurisdiction for all oil and gas operations..

g. Approximately 12 tanker trucks are engaged in daily unauthorized trespassing.(Case Page ID 21)

h. I informed the Attorney General of Texas of violation of my Civil Rights.( Case Page ID 26)

i. All defendants are in violation of Shah's US Constitutional rights as well as Texas Constitution rights ( Case Page IDs 4,26)

**31**. a court confronted with a Rule 12(b)(6) motion must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant, *Gross v. German*

---

[14] I feel like in my 4 bedroom house, one of the rooms is occupied by someone without my permission. Furthermore, occupiers are authorized and permitted by the RRC of continuous stay and harm me with unbreathable air.

*Found Indus. Initiative, 549 F.3d 605, 610 (3d Cir. 2008)* "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes , 416 U.S. 232, 236 (1974)*

**32.**   On a Rule 12(b)(6) motion to dismiss, "the defendant bears the burden of showing that no claim has been presented." *Hedges v*. *United States*, 404 F.3d 744, 750 (3d Cir. 2005).

**33.**   "The factual predicate for a common knowledge case is one where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 579 (3d Cir. 2003) (quotation marks omitted); *see Hubbard v. Reed*, 168 N.J. 387, 774 A.2d 495, 500 (2001)

**34.**   When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Bell Atlantic Corp., supra, at ___ (slip op., at 8–9) (citing Swierkiewicz v. Sorema N. A., 534 U. S. 506, 508, n. 1 (2002); Neitzke v. Williams, 490 U. S. 319, 327 (1989); Scheuer v. Rhodes, 416 U. S. 232, 236 (1974)).Courts may consider any "'document integral to or explicitly relied upon in the complaint.'" Burlington Coat Factory, 114 F.3d at 1426 (quoting Shaw, 82 F.3d at 1220).

**35.**   In some cases,  "actions of private entities can sometimes be regarded as governmental action for constitutional purposes." *Lebron v*. *Nat'l R*.*R*. *Passenger Corp*., 513 U.S. 374, 378 (1995).

Here, as above, the private defendants can not perform without the public defendant's supervision and blessings and so, their action may be considered governmental.

**36**.   "In determining whether a complaint states a claim that is plausible, the court is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true[,'] [e]ven if their truth seems doubtful." *Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).*

**37.**   *Nicholas v. Saul Stone & Co., 224 F.3d 179, 184 (3d Cir. 2000))*: "New Jersey's long arm statute allows the exercise of personal jurisdiction over non-resident defendants to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment."

Your Honor, the Complaint  provides information about the "what" and the "how" by providing ample notice about what violative conduct occurs on my land and how it happens. For example,  the Complaint clearly describes having defendants engaged in  flaring and trespassing.The facts pleaded in the Complaint specify the who, what, when, where, and how of the misconduct charged and put all defendants on notice of the representations at issue in this case. Multiple plausible claims can easily be  derived from the *Complaint.* The boilerplate notorious motion of 12(b)6 has no place here and must be denied.

In summary, there is no discovery done and the MTD is extremely premature and highly prejudicial to the Shah. In the interest of Justice, the MTD must be denied and the Court needs to move the case forward.  Furthermore, defendants' motion should be rejected as it is untimely  and fails to comply with the requirements of Fed. R. Civ. P. 12(b). Nonetheless, if the Court elects to consider the motion as a motion for judgment on the pleadings, the Motion should be denied as the arguments defendants' raise are meritless. Analysis of the Complaint as a whole demonstrates that the Complaint contains a detailed factual account that more than satisfies Fed. R. Civ. P. 8.

## ISSUES NOT ADDRESSED IN THE MOTION TO DISMISS

I bring to the Court's attention the following issues not answered/addressed in the MTD.

A.     All the arguments made in the MTD relate to property issues. But, what about my liberty? By installing gas flare on my land, public and private defendants are violating my fundamental life and liberty rights granted to me in the 14th amendment. The MTD has failed  completely to address any of the liberty right issues.[15]

B.     If the Texas Law declares mineral rights superior to surface rights, are they also taxed the same way? Both are considered real properties and shouldn't equal protection of law apply in taxation of such real properties? However, minerals are not taxed unless they are realized. Not the same for the surface owners.This is  a clear violation of my U.S. Constitution rights.[16]

C.     Mineral property is the  dominant real property in Texas. These minerals cease to lose dominant real property status at the well's head and become personal property. Now, if this is true, why does RRC has jurisdiction over tank battery operation on my land?  I have no oil and gas well on my land and it is only used for storage (ie personal property)[17]. By permitting/regulating to store, RRC is engaged in violation of my Texas Real Property Rights as well as the US Constitutional rights.

In essence, MTD must be denied.

---

[15] The court in *Lawrence v. Texas 539 US 558 (2003):*"Their right to liberty under the Due Process Clause gives them the full right to engage in their conduct without intervention of the government,".

[16]  Reich v. Collins, 513 U.S. 106, 108 (1994): the Due Process Clause of the Fourteenth Amendment demands that states provide a "clear and certain remedy" for the unlawful exaction of taxes.

[17] In *ERG Resources, LLC v. Merlon Texas, Inc* 01-08-01007-CV:The First Court of Appeals in Houston,Texas held that oil which had been severed and stored in tanks on site was personal property.

## CONCLUSION

I have never received any compensation for using my land. How can all defendants sleep? It is unconscionable. The tortfeasor private defendants are regulated, guided, aided and permitted by the public defendant.

Your Honor, my complaint neither can  be dismissed by pleading 11th amendment nor under Fed. R. Civ.P. 12 (b)1, 12(b)2  12 (b)3 or 12(b)6. Please help me protect my Constitutional rights.

Your Honor, the public and private defendants are intertwined and they feed on each other. I seek Your Honor's  guidance. I am willing to amend the complaint, if necessary, to add RRC commissioners and the attorney general of Texas as defendants. The defendants have failed to make any reasonable and logical arguments in support of their MTD.  The Motion to Dismiss must be denied.

I pray for all Just and proper relief.

Respectfully Submitted,


Peter I. Shah, Pro Se                    Date: 04/12/2022


Certificate of Service

On 4/12/2022, I sent this  Response  to the following email addresses.

pkipnis@baileyglasser.com, andrew.heck@wilsonelser.com

susan.scott@law.njoag.gov, shannon.ryman@oag.texas.gov

Amy.Rodriguez@oag.texas.gov    shelly.doggett@aog.texas.gov


Peter Shah